[Crim. No. 16711. Second Dist., Div. Four. Apr. 24, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT WILSON SCHNEIDER, Defendant and Appellant.

## COUNSEL

Frank P. Rosen, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Allen A. Haim, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, Acting P. J.**—Defendant was charged, jointly with Gracie Ann Lyons (count I) with inflicting cruel and inhuman corporal punishment on a child, in violation of section 273d of the Penal Code, and (count II) with causing or permitting the life or limb of that child to be endangered, in violation of subdivision (1) of section 273a of the Penal Code.[1] After a trial by the court, trial by jury having been duly waived, they were found

[1]As the trial court pointed out, the information was couched in the language of section 245 as it had read prior to the 1965 amendment. However, the case was tried, and determined, on the theory that the 1965 language was applicable. No issue as to the variance was made in the trial court, or here.

not guilty on count I and guilty on count II. Defendant's motion for a new trial was denied and he was granted probation. He has appealed from the judgment (order granting probation) and from the order denying his motion for a new trial.[2] We dismiss the appeal from the nonappalable order denying a new trial and reverse the judgment (order granting probation).

 The child involved, a boy aged two years, is the child of codefendant Lyons. Mrs. Lyons had begun to live with defendant some months before the episode herein involved. Shortly after they began cohabitation, she discovered that he was an epileptic. On November 21, 1968, Mrs. Lyons had left her son in the same room with defendant. She heard a scream, ran into the room and discovered defendant in an epileptic seizure and that the child had been struck and knocked against a TV set. Mrs. Lyons' sister testified to seeing bruises on the child on two earlier occasions, one set of which was explained to her by the mother as having been caused by an automobile striking the child, the other by his falling downstairs. Medical evidence was to the effect that it was unlikely that the earlier bruises, as they appeared when the child was examined on November 22d, could have been caused either by an automobile or by falling downstairs.

Defendant contends that the evidence does not support the finding of guilt. We agree.

It is admitted that the injuries inflicted on November 21st were caused by a blow struck by defendant. It is not contended that that blow (or blows) were deliberately or intentionally struck, much less that any actual intent to injure was involved. The case for the People rests on the theory that defendant (and the mother) had wilfully caused and permitted the child to be placed in a situation such that its person or health was endangered. We can see in the record before us no more than a suspicion that that was the case.

 In order to sustain the prosecution theory the following elements must have concurred: (1) that defendant was an epileptic; (2) that he knew he was an epileptic; (3) that his epileptic condition was one that was likely to cause seizures of such violence that he might injure persons near to him when they occurred; (4) that defendant knew that seizures of such nature were likely; (5) that defendant allowed the child to remain alone in a room with him.

 Of those elements, the evidence supports a finding that the first, second and fifth existed.[3] But we can find nothing in the record to sustain

---

[2]The record does not show the disposition of the case against Mrs. Lyons.

[3]We accept the contention that defendant was an epileptic because Mrs. Lyons so testified and no one questioned her as to the basis of that lay diagnosis. Presumably

a finding that the third or fourth elements existed. It is true that the medical testimony casts doubt on the explanation given by the mother for the two earlier sets of bruises. But that testimony, while it may impeach the mother, is not affirmative evidence of how those bruises actually occurred. We do not know that they were caused by defendant rather than by the mother or by someone else; we do not know that defendant was aware of their cause; we do not know that, assuming they were caused by defendant, that they were the result of an epileptic seizure. In addition, we know nothing of defendant's condition other than that he was "epileptic"; we do not know when, or by whom, that diagnosis had been made, nor that it was the kind of epilepsy that would ordinarily result in violent seizures, nor do we know what, if any treatment defendant was undergoing. Assuming that defendant was, in fact, afflicted with epilepsy in its most violent form, we do not know that he knew the full nature of his condition. No testimony tells us more than that he had had seizures previously, but that none of them had ever injured the baby nor (so far as the record discloses) anyone or anything.

On this minimal showing, we cannot say that defendant had "wilfully" caused the child to be placed in a situation that its health or safety was endangered.

The judgment (order granting probation) is reversed; the appeal from the order denying a motion for a new trial is dismissed.

Dunn, J., and Irwin, J.,* concurred.

---

the probation report and the psychiatric examination ordered by the court give fuller information, but they were not before the court at the guilt stage of the trial and are not before us.

*Retired judge of the superior court sitting under assignment by the Acting Chairman of the Judicial Council.